## Commonwealth v. 174 Bottles of Various Liquors

*Edmund P. Hannum,* Special Deputy Attorney General, for Pennsylvania Liquor Control Board.

*Robert T. Potts,* for respondent.

CORSON and DANNEHOWER, JJ., March 23, 1948.— This case arises upon a petition filed on behalf of the Pennsylvania Liquor Control Board (hereinafter referred to as "board"), alleging that the bottles of liquor in question were, when seized by the board, unlawfully possessed or intended for use in violation of the Pennsylvania Liquor Control Act, and asking that the court order the liquor destroyed or delivered to a hospital.

Due notice of the filing of the petition was given to William Haines, the person in whose possession the liquor was found, and he filed an answer in which he denied that he was unlawfully possessed of the liquor or that it was intended for use in violation of the law, and averred that the liquor was lawfully purchased at State liquor stores, all taxes having been paid thereon.

An issue having thus been raised, a hearing was held, and the matter is now pending for decision.

On February 25, 1944, enforcement officers of the board, accompanied by a member of the local police force, and armed with a search warrant, visited the establishment of William Haines at 410 Jacksonville Road, Hatboro, this county. The entire first floor of the premises is operated as a restaurant under restaurant liquor license no. R 11814. The upper floor of the property is occupied by Haines as living quarters. The officers made an inspection of the entire premises.

To the rear of the dining room on the first floor of the licensed premises, and behind a locked door, is located a private stairway leading to the second floor living quarters of the licensee. While there is some conflict in the evidence, the most satisfactory testimony as to the location of the liquor that was seized comes from Haines, the licensee. He testified that the 174 bottles in question, consisting principally of gin and miscellaneous cordials, were stored in cases on this stairway, and according to him were kept there

for his own personal use, having been purchased for that purpose.

Haines also testified that in a large locked closet under the same stairway, there were approximately 24 cases of liquor, principally whiskey, which was intended for use in the bar and restaurant, having been purchased for that purpose. The liquor found in this closet was not seized, and is not in question in this proceeding.

Of the 174 bottles which were found on the stairway, and seized by the officers, it appears that 92 bore stamps showing they had been purchased at retail from various State stores, and the 82 remaining bottles, according to Haines' statement, had been purchased by him through one Maas, then a clerk in a State store, at a premium of 75 cents per bottle. Maas had personally delivered the bottles so sold to Haines. All the 174 bottles have appropriate tax stamps or seals.

As stated in the brief of counsel for the board, the only question of fact is whether the bottles of liquor were stored on the licensed premises with the other liquor Haines used to supply his restaurant, or were in the dwelling part of the premises, for his own use. This question we have resolved in favor of the owner, Haines. The board's enforcement officers admitted in several instances shown in the record that their recollection was faulty in regard to the layout of the building, and as to the number and kind of bottles examined or seized. This is not surprising, for more than three and one half years elapsed between the date of the seizure and the date of the hearing on the petition. Moreover, it is to be expected that the circumstances existing at the time of the seizure would be more accurately and vividly fixed in Haines' recollection. His version is also supported by the fact that the liquors seized were of a kind not in particularly great general demand, thus lending credence to his contention

that they were intended for personal use, rather than for resale in his restaurant.

Therefore, the question to be decided is whether under the circumstances of this case, the seized liquor is by law subject to forfeiture and condemnation. To sustain the contention of the board, counsel relies on various sections of the Liquor Control Act and certain regulations adopted by the board.

Section 602 (2) of the Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, as amended, 47 PS §744-602(2), makes it unlawful to possess any liquor which has not been purchased from a Pennsylvania liquor store or in accordance with the board's regulations.

Section 607 (c) of the same act (47 PS §744-607(c)) makes it unlawful for any person purchasing at wholesale liquor from the board, either directly or indirectly, to pay any commission, profit or remuneration to any member or employe of the board.

Counsel for the board contends that the undenied fact that 82 bottles were purchased from a liquor store clerk, at a premium, renders the liquor so purchased subject to forfeit. However, in our opinion, a purchase from a clerk is a purchase from the store, regardless of the mode of delivery, and the possession of liquor so purchased is not unlawful under section 602(2). The payment of a premium to the employe is of course unlawful under 607 (c), but possession of liquor purchased by such means is not made unlawful by that section, so as to subject it to forfeiture.

Under authority of the Act of May 21, 1943, P. L. 403, the board adopted a regulation making it unlawful to purchase liquor at retail for resale, and also making it unlawful for a licensee to have in his possession any liquor purchased at retail. Counsel concedes this regulation should not be construed to prevent a licensee from purchasing at retail as an individual for his own use, but contends that Haines has failed to sustain the burden of proving that he law-

fully acquired the liquor and that it was not unlawfully used or possessed. However, as we have pointed out above, we do not deem the purchase from a clerk at a premium sufficient to render the acquisition unlawful, and even though some bottles were purchased, at retail, we are satisfied that they were purchased, kept and intended for Haines' personal and private use, separate and apart from liquors intended for resale in his restaurant.

Under all the circumstances, therefore, the petition must be dismissed.

And now, March 23, 1948, for the reasons given in the foregoing opinion, the petition of the Pennsylvania Liquor Control Board is dismissed, and the 174 bottles of liquor, subject of the petition, are ordered to be returned to William Haines, owner and claimant.